UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                                          **FOR PUBLICATION**

　　　　　VELO HOLDINGS INC., *et al.,*                      **Case No. 12-11384 (MG)**

                                                                **Chapter 11**

　　　　　　　　　　　　　　　　　Debtors.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR AN ORDER
ENFORCING THE PLAN AND CONFIRMATION ORDER
INJUNCTIONS AGAINST THE ARKANSAS ATTORNEY GENERAL**

*A P P E A R A N C E S:*

DECHERT LLP
*Counsel for the Debtors*
1095 Avenue of the Americas
New York, New York 10036
By:　　Shmuel Vasser, Esq.

WILLKIE FARR & GALLAGHER
*Counsel for Reorganized Velo Holdings Inc.*
787 Seventh Avenue
New York, New York 10019
By:　　Ana Alfonso, Esq.

OFFICE OF THE ARKANSAS ATTORNEY GENERAL
*State of Arkansas*
323 Center Street, Suite 500
Little Rock, Arkansas 72201
By:　　Bart W. Calhoun, Esq.

　　　　Pending before the Court is the *Motion of Velo ACU LLC and the Reorganized Debtors*

*for an Order Enforcing the Plan of Reorganization and Confirmation Order Injunctions against*

*the Arkansas Attorney General* (the "Motion," ECF Doc. # 863).  The State of Arkansas filed a

response (ECF Doc. # 883), and Velo filed a reply (ECF Doc. # 896).  Velo's motion is

supported by the Declaration of Alan M. Jacobs (ECF Doc. # 896-2).  On October 25, 2013,

Arkansas filed a supplemental response that included 14 pages of additional briefing (ECF Doc. # 918).  The Court held a hearing on the Motion on November 6, 2013.

For the reasons stated below, the motion is **DENIED** without prejudice.

## I.    BACKGROUND

### A.  Facts Giving Rise to the Dispute

ACU LLC is a holding company formed pursuant to the Velo Holdings Reorganization Plan, which became effective on February 4, 2013.  ACU LLC filed this Motion along with its affiliated reorganized debtors (collectively, the "Movants").  Before the Petition Date in this matter, several state attorneys general, including the Arkansas Attorney General (the "Arkansas AG"), initiated investigations into two Velo affiliates:  Vertrue and Adaptive.  (*See* Motion ¶ 1.) These Velo affiliates engaged in direct and third party marketing to consumers to offer identity-theft protection and lifestyle and shopping products.  (*Id.* ¶¶ 7–9.)  Aside from attracting customers through its marketing efforts, Vertrue and Adaptive also gained customers "organically," meaning that the customers independently sought out the affiliates' services.  (*Id.* ¶ 10.)

Pursuant to *The Modified First Amended Joint Plan of Reorganization of Velo Holdings, Inc. and its Affiliated Debtors and Debtors in Possession under Chapter 11 of the Bankruptcy Code* (the "Plan," ECF Doc. # 702, Ex. 1), Vertrue and Adaptive's credit and identify-theft business and their lifestyle and shopping business (together, the "ACU Business") were placed into a "harvest," meaning that the entities ceased all marketing practices and terminated relationships with third party marketers, focusing their efforts on continuing to derive revenue from their existing customers.  (*Id.* ¶¶ 1, 15, 22.)  The ACU Business continues to gain organic customers, though, and continues to service its previously-enrolled customers, so the ACU

2

Business still generates revenue.  (*Id*. ¶¶ 1, 16; Jacobs Decl. ¶ 2.)  This revenue will be used to pay distributions pursuant to the Plan.  (*Id.* ¶ 1.)  Current Chief Executive Officer of the reorganized debtors (and former Chief Restructuring Officer of the ACU Business) Alan M. Jacobs oversees the harvest.  (*Id.* ¶ 17.)

The Plan and Confirmation Order enjoin "all parties in interest and creditors" from: (1) "taking any actions to interfere with the implementation or consummation of the Plan;" and (2) "prosecuting or asserting all Claims against the Reorganized Debtors and ACU LLC or their assets and properties."   (Plan §§ 10.2, 10.4, Confirmation Order ¶¶ 28(a)–(b), 30.)  By incorporating Bankruptcy Code 101(5), the Plan defines a Claim as "a right to payment, whether or not . . . reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," and claims described in 101(5)(b). The Plan also includes "Administrative Expenses" in its definition of Claims, making the "actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtors' estates or operating the Debtors' businesses," discharged Claims.  (Plan § 1.7.)

In 2010, the Arkansas AG issued an investigative demand that sought information about Vertrue and its affiliates.  (Motion ¶ 12.)  The Debtors responded by producing over 10,000 pages of documents along with narrative responses.  (*Id*. ¶ 13.)  On May 28, 2013, the Arkansas Attorney General issued a new civil investigative demand (the "CID").  (*Id*. at 1.)  Arkansas did not file a proof claim in the bankruptcy, nor did it object to the Plan.  (*Id*. ¶ 5.)  The present CID seeks (1) a list of all Arkansas Residents whom the Movants billed from February 1, 2013, to the present, (2) the names of all membership programs for each person billed, (3) the names of the membership programs in which each person was enrolled, and (4) a complete list of the Movants' marketing partners from February 1, 2013, to the present.  (*Id*. ¶ 3.)  By letter and

3

phone conference, the Movants opposed the CID, arguing that the ACU Business no longer

conducts any marketing and that the CID violates the Court's injunctions pursuant to the Plan

and the Court's Confirmation Order.  (*Id.* ¶¶ 2, 21–22.)  The Arkansas AG responded that it does

not believe that either the Plan or the Confirmation Order enjoins Arkansas from investigating

conduct from February 1, 2013, to the present.  (*Id.* ¶ 4, 23.)

In July 2013, the Movants provided limited written responses to the CID, stating only that

ACU LLC has not offered or operated any membership programs, has not engaged in marketing

activities, has not enrolled consumers in membership programs, has not contracted with or

maintained marketing partners, and has not billed any consumers from February 13, 2013, to the

present.  (*See* Motion Ex. 8.)  The Movants premised their response on the grounds that ACU

LLC is a holding company that does not conduct those activities, and the CID did not properly

request any information about the activities of any other actual ACU LLC affiliates or

subsidiaries.  (*See* Motion ¶ 24.)  The Arkansas AG responded that it was indeed inquiring about

the activities of all ACU LLC affiliates, parents, partners, subsidiaries, or any entity with an

ownership interest in ACU LLC.  (*See* Motion Ex. 9.)  ACU LLC did not respond to this letter

and instead filed this Motion.

### B.  The Movants' Argument

The Movants claim that the Arkansas AG is engaged in a thinly veiled attempt to

investigate prepetition ACU Business practices.  Even though the CID seeks information from

February 1, 2013, the Movants argue that they have engaged in no marketing whatsoever and

have terminated relationships with third party marketers, so the Arkansas AG cannot actually be

concerned with the Movants' current practices.  (*See* Jacobs Decl. ¶ 3 ("At no point since on or

about the Petition Date has the ACU Business engaged in any marketing activities.  The Debtors

rejected all of the marketing contracts related to the ACU Business . . . .").)  Instead, the Movants

argue that the Arkansas AG is trying to pursue a claim it could have brought before the petition.

Alternatively, the Arkansas AG could have filed a claim in the bankruptcy action or could have

objected to the Plan, but it did not do so.  According to the Movants, Arkansas should not be

allowed to use the CID as a means for pursuing clams it has already waived.

Additionally, the Movants argue that since the ACU Business is being harvested, ACU

LLC is only acting to maintain the Debtors' estate.  Thus, claims relating to ACU LLC's

maintenance of the Debtors' estate should constitute Administrative Expenses that were

discharged by the Plan and Confirmation Order.

The Movants also argue that Arkansas has no authority under state law to issue the CID.

### C.  Arkansas' Response

Arkansas argues that it is not pursuing any type of claim, but is instead merely

conducting an investigation with no prospect of a claim on the horizon.  Further, Arkansas

argues that it is concerned about the Movants' ongoing business practices, and even if the ACU

Business is harvested, it cannot be sheltered from a claim relating to its postpetition practices.

Arkansas also argues that the Movants enter into a new transaction with each customer every

time that customer is billed, making it acceptable for Arkansas to investigate facts about all

current ACU LLC customers.

Arkansas also argues that any challenge to its ability under state law to issue the CID

should be mounted in Arkansas state court.

### D.  The Movants' Reply

The Movants reply that the Arkansas AG's filing fails to specify any alleged deceptive

practices, revealing that the AG is actually pursuing the investigation based on prepetition ACU

Business practices.  If the Arkansas AG's only goal is to contact the Movants' current customers, the state would interfere with the Movants' ongoing business, which would in turn interfere with implementation of the Plan.  And without any support, the Arkansas AG claims that the Movants continue to solicit new business, while the Movants' Declaration from Alan Jacobs reiterates that the ACU Business is no longer engaged in any marketing activities.  The Movants also argue that even if the Arkansas AG does nothing more than investigate ACU LLC, discovery constitutes the "commencement or continuation of an action, [or] the employment of a process," so the Arkansas AG's actions should be are barred by the injunction.

## II.    DISCUSSION

### A.  Claims Relating to Prepetition Conduct Have Been Discharged, but the Plan Does Not Enjoin Claims Relating to Post-Confirmation Conduct.

The Court has jurisdiction to "enforce and construe" the terms of the Plan and the Confirmation Order.  *See Texaco Inc. v. Sanders (In re Texaco, Inc.*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995) (ruling on motion to enforce confirmation order); *see also In re Speigel Inc.*, No. 03-11540 (BRL), 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) ("A Bankruptcy Court also has inherent or ancillary jurisdiction to interpret and enforce its own orders, including the Confirmation Order . . . .").  Bankruptcy Code section 524(a)(2) provides that a discharge under the Code "operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived."  And the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation . . . ."  11 U.S.C. § 1141(d)(1)(A).  The Movants argue that Arkansas is ultimately seeking a right to payment for acts that occurred before Plan confirmation.

6

A claim will be subject to discharge if it relates to conduct arising prepetition that would support a claim had the bankruptcy proceeding not been initiated. *See United States v. LTV Corp. (In re Chateaugay Corp.),* 944 F.2d 997, 1003 (2d Cir. 1991) ("[A] 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets."). If the Arkansas AG were to assert a claim for damages, that claim may or may not be enjoined depending on the basis for the claim. For example, if the AG sought damages from the Movants for conduct related to the ACU Business that occurred before Plan confirmation, Arkansas would be subject to the Plan's injunction. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 902 (6th Cir. 2009) (holding that claim for damages relating to business practice that debtor maintained prepetition and continued post confirmation was discharged); *Browning v. MCI, Inc.*, *(In re WorldCom, Inc.)*, 546 F.3d 211 (2d Cir. 2008) (Sotomayor, J.) (finding that claim for postpetition damages relating to condition that existed in same state prepetition was discharged). But if the Arkansas AG (1) investigates post-confirmation conduct, or (2) seeks to impose a fine on or files a claim against the Movants solely for deceptive practices occurring *after* Plan Confirmation, the Arkansas AG would not be violating the terms of the Plan or Confirmation Order. *See Chateaugay*, 944 F.2d at 1008 (finding that claim for injunctive relief that would terminate or eliminate current wrongdoing was not dischargeable); *In re Torwico Elecs., Inc.*, 8 F.3d 146 (3d Cir. 1993) (deeming an obligation to remedy a continuing danger not a dischargeable claim); *see also Tam Travel*, 583 F.3d at 902 ("[A] successfully reorganized debtor . . . is liable for any independent conduct that arises after the confirmation of its bankruptcy plan."); *O'Loghlin v. County of Orange*, 229 F.3d 871, 878 (9th Cir. 2000) (finding a claim relating to prepetition illegal acts discharged, but claim a relating to "illegal conduct occur[ing] after [the] discharge" was not discharged).

7

And if the Arkansas AG seeks damages for fraud committed both prepetition and post-confirmation, the claim for prepetition fraud would be enjoined since the Arkansas AG could have brought that claim before the bankruptcy action. *See Chateaugay*, 944 F.2d at 1003. But the state could still pursue a remedy for the post-confirmation fraudulent conduct so long as that conduct was independent of, and not a mere continuation of, prepetition business practices. *See Tam Travel*, 583 F.3d at 902 (holding that a claim was discharged where debtor merely continued to offer a price that it had set before the petition); *O'Loghlin*, 229 F.3d at 878 (finding illegal conduct after discharge was not discharged). Since claims arising from post-confirmation illegal conduct are not subject to discharge if they are new, independent acts, a claim that the Movants have engaged in new deceptive practices would not have been discharged by the Plan or Confirmation Order. *See O'Loghlin*, 229 F.3d at 878 (holding that a claim based on illegal conduct after discharge not barred by discharge).

The Arkansas subpoena seeks information regarding the Movants' conduct after February 1, 2013, and the state has not filed an action against the Movants. If Arkansas wishes to expand its investigation, it may seek information regarding prepetition conduct so long as it only uses that information to inform a claim based on post-confirmation acts. *See Curtis Mfg. Co. v. Plasti-Clip Corp.*, 888 F. Supp. 1212, 1218 (D.N.H. 1994) *rev'd on other grounds*, 135 F.3d 778 (Fed. Cir. 1998).

### B.  Deceptive Billing May Constitute Ongoing Deceptive Conduct, Regardless of Whether the Bills Continue a Pre-Existing Customer Relationship.

The parties dispute whether sending a bill to an existing customer could constitute a new deceptive act, or whether that act would be a continuation of prepetition business practices. Specifically, Arkansas asserts that Vertrue may be charging customers without authorization, and if so, the practice is a continuing violation. The state cites several cases indicating that bills may

8

themselves be deceptive, particularly if they misrepresent the basis of charges or if they contain unauthorized charges. *See, e.g.*, *FTC v. INC21*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) (finding that customer bills were deceptive where customers had not agreed to buy defendant's products or to incur any charges); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719–21 (S.D. Tex. 2008) (holding that defendant committed deceptive acts by "submitting unauthorized charges on consumers' telephone bills"). Even if the Movants were only billing customers who enrolled prepetition, the Court never approved the Debtors' ongoing billing practices, which may run afoul of state deceptive practices law. Thus, it is possible that a current bill to a pre-existing customer could contain deceptive language that did not appear prepetition.

### C. Arkansas Has Not Yet Taken an Action or Employed a Process Barred by Bankruptcy Code Section 524.

The Movants argue that the discovery Arkansas seeks would constitute an "action" or "employment of a process" that is barred under the Bankruptcy Code. *See, e.g.*, *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832 (Bankr. S.D.N.Y. 1980) (denying a request for discovery of debtor's customer list as continuation of action and employment of process against debtor); *In re Manown*, 212 B.R. 411, 411 (Bankr. N.D. Ga. 1997) ("Discovery is considered part of the 'continuation' of a proceeding."). But the Movants failed to cite any cases indicating that post-confirmation discovery should treated similarly to discovery during a bankruptcy's pendency, where the court must consider the potential "interference" with "the pending bankruptcy case." *See In re Penn-Dixie*, 6 B.R. at 835. Moreover, all but one of the Movants' cases involve discovery being used to initiate or continue litigation, whereas here, Arkansas has not initiated any litigation.

9

### D.  Arkansas Has Not Violated the Plan or Confirmation Order Injunctions.

At this stage, Arkansas has only issued the CID.  It has not brought a claim, nor has it expressed any intention of bringing a claim.  Instead, Arkansas has declared that it is only investigating post-confirmation conduct, and if it decides to bring a claim, that claim will be restricted to post-confirmation conduct.  Thus, Arkansas' investigation does not run afoul of the Plan or Confirmation Order injunctions.  *See Tam Travel*, 583 F.3d at 902; *O'Loghlin v. County of Orange*, 229 F.3d at 878.

The threat remains, though, that Arkansas could impermissibly expand the scope of its investigation.  The Movants' motion is therefore denied without prejudice to renewal if Arkansas does attempt to bring a claim against the Movants premised on the Movants' prepetition conduct.

### III.    CONCLUSION

For the reasons stated above, the Motion is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated:  November 8, 2013
        New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge