**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

VELO HOLDINGS INC., *et al.*,

Debtors.

**FOR PUBLICATION**

**Case No. 12-11384 (MG)**

**Chapter 11**

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR AN ORDER ENFORCING THE PLAN AND CONFIRMATION ORDER INJUNCTIONS, HOLDING THE FLORIDA ATTORNEY GENERAL IN CONTEMPT, AND IMPOSING SANCTIONS**

*A P P E A R A N C E S:*

DECHERT LLP
*Counsel for the Debtors*
1095 Avenue of the Americas
New York, New York 10036
By:   Shmuel Vasser, Esq.

WILLKIE FARR & GALLAGHER
*Counsel for Reorganized Velo Holdings Inc.*
787 Seventh Avenue
New York, New York 10019
By:   Ana Alfonso, Esq.

OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA
*State of Florida*
The Capitol, PL-01
Tallahassee, FL 332339-1050
By:   Allison Finn, Esq.

Pending before the Court is the *Emergency Motion of Velo ACU LLC and the Reorganized Debtors for an Order (I) Enforcing the Plan of Reorganization and Confirmation Order Injunctions; (II) Holding the Florida Attorney General in Contempt; and (III) Imposing Sanctions* (the "Motion," ECF Doc. # 907). The State of Florida filed a response (ECF Doc.

# 922), and Velo filed a reply (ECF Doc. # 925).  The Court held a hearing on the Motion on November 6, 2013.

For the reasons stated below, the motion is **DENIED** without prejudice.

## I.    BACKGROUND

### A. Facts Giving Rise to the Dispute

ACU LLC is a holding company formed pursuant to the Velo Holdings Reorganization Plan, which became effective on February 4, 2013.  ACU LLC filed this Motion along with its affiliated reorganized debtors (collectively, the "Movants").  Before the Petition Date in this matter, several state attorneys general, including the Florida Attorney General (the "Florida AG"), initiated investigations into two Velo affiliates:  Vertrue and Adaptive.  (*See* Motion ¶ 1.) These Velo affiliates engaged in direct and third party marketing to consumers to offer identity-theft protection and lifestyle and shopping products.  (*Id*. ¶¶ 12–13.)  Aside from attracting customers through its marketing efforts, frequently using third party marketing companies, Vertrue and Adaptive also gained customers "organically," meaning that the customers independently sought out the affiliates' services.  (*Id*. ¶13.)

Pursuant to *The Modified First Amended Joint Plan of Reorganization of Velo Holdings, Inc. and its Affiliated Debtors and Debtors in Possession under Chapter 11 of the Bankruptcy Code* (the "Plan," ECF Doc. # 702, Ex. 1), Vertrue and Adaptive's credit and identify-theft business and their lifestyle and shopping business (together, the "ACU Business") were placed into a "harvest," meaning that the entities ceased all marketing practices and terminated relationships with third party marketers, focusing their efforts on continuing to derive revenue from their existing customers.  (*Id*. ¶¶ 21–23.)  The ACU Business continues to gain organic customers, though, and continues to service its previously-enrolled customers, so the ACU

2

Business still generates revenue. (*Id*. ¶ 23.) Current Chief Executive Officer of the reorganized debtors (and former Chief Restructuring Officer of the ACU Business) Alan M. Jacobs oversees the harvest. (*Id*. ¶ 24.)

The Plan and Confirmation Order enjoin "all parties in interest and creditors" from: (1) "taking any actions to interfere with the implementation or consummation of the Plan;" and (2) "prosecuting or asserting all Claims against the Reorganized Debtors and ACU LLC or their assets and properties." (Plan §§ 10.2, 10.4, Confirmation Order ¶¶ 28(a)–(b), 30.) By incorporating Bankruptcy Code section 101(5), the Plan defines a Claim as "a right to payment, whether or not . . . reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," and claims described in section 101(5)(b). The Plan also includes "Administrative Expenses" in its definition of Claims, making the "actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtors' estates or operating the Debtors' businesses," discharged Claims. (Plan § 1.7.)

Florida did not file a proof of claim in the bankruptcy, nor did Florida object to the harvest, the Disclosure Statement, or the Plan. (Motion ¶ 25.) But Florida had investigated Vertrue previously—in June 2004, Vertrue and the Florida AG signed a settlement agreement, after which the Florida AG ceased its investigation of Vertrue's advertising and business practices. (*Id*. ¶ 14.) The Movants attached that agreement to the Motion at Exhibit 4. As part of the settlement, Florida released Vertrue from claims, including future claims that could be asserted in a civil or administrative proceeding, based upon the matters investigated. (*Id*. ¶ 16.)

In 2010, Florida participated in a multi-state investigation of Vertrue and Adaptive. (*Id*. ¶ 18.) On August 2, 2010, the Florida AG served Vertrue with a civil investigative demand

3

("CID"), seeking among other things information about Vertrue's customers in Florida, its business partners, its method of customer enrollment, and inquiries and complaints made by Florida residents. (*Id.* ¶ 19.) The Debtors produced over 24,000 pages of documents and electronic data to the Florida AG in response to the CID, and the Florida AG did not initiate proceedings against the Debtors. (*Id.* ¶ 20.)

On August 16, 2013, the Florida AG served a subpoena on the Movants pursuant to the Florida Unfair and Deceptive Trade Practices Act. (*Id.* ¶ 29.) In response to the subpoena, the Movants informed the Florida AG that they no longer advertise or market with third parties to obtain new customers, but instead only enroll new customers organically. (*Id.* ¶ 30.) The Florida AG responded that it was not concerned about organic enrollment, but was instead concerned about unauthorized customer charges. (*Id.* ¶ 31.) The Florida AG then filed a petition in state court on October 17, 2013, seeking to compel the Movants to comply with the August 16, 2013 subpoena. (*Id.* ¶¶ 33–35.) The petition states that the Florida AG is only investigating membership charges post-dating the Confirmation Order. (*Id.*¶ 35.)

### B. The Movants' Argument

The Movants claim that the Florida subpoena is enjoined by the Plan's provision barring actions or proceedings with respect to claims against the Movants. Further, the Movants note that the Plan enjoins parties from interfering with implementation of the Plan. Even though the subpoena seeks information from February 1, 2013, to the present, the Movants argue that they have engaged in no marketing whatsoever and have terminated relationships with third party marketers, so the Florida AG is actually only investigating customer relationships that existed prepetition. Thus, according to the Movants, Florida is attempting to pursue a claim it could have brought before the petition and should be barred by the Plan injunction. Alternatively, the

4

Florida AG could have filed a claim in the bankruptcy action or could have objected to the Plan, but it did not do so. According to the Movants, Florida should not be allowed to use the subpoena as a means for pursuing clams it has already waived.

Additionally, the Movants argue that the Florida AG should be held in contempt for willfully violating the Confirmation Order. The Movants note that they informed the Florida AG of the bankruptcy injunctions, yet the Florida AG filed the subpoena without providing advance notice required by state law. Sanctions are warranted here, according to the Movants, because the subpoena flaunts the Court's injunctions and only drives up the Movants' legal expenses.

### C. Florida's Response

Florida responds that its subpoena does not constitute a "claim" subject to the Plan injunction, nor does the subpoena interfere with implementation of the Plan. The subpoena seeks information about potential unauthorized billing of customers, which would constitute a continuing violation of Florida law and would not have been discharged in bankruptcy. According to the Florida AG, the state is only seeking information about Vertrue customers being charged without authorization, and if the investigation indicates that no such customers exist, the state will not take any further action.

### D. The Movants' Reply

The Movants reply by labeling Florida's investigation a "pure fishing expedition" that will disrupt the Court-approved arrangement allowing the Movants to maintain the ACU Business customer base. According to the Movants, Florida has offered no evidence to support its speculation that the Movants may be charging consumers without authorization. Instead, Florida only relies on evidence of the company's conduct before the bankruptcy, as well as the conduct of other marketers not necessarily affiliated with the company.

5

Additionally, the Movants note that the cases Florida cites regarding unauthorized billing only find liability for conduct that is not reasonably avoidable by consumers. But here, the Movants' customers receive notice and disclosures when charged, along with a telephone number to call to cancel membership, all as part of the Movants' 2004 stipulation reached with Florida. Thus, according to the Movants, any conduct by the Movants that is potentially harmful to Florida consumers is also reasonably avoidable by those same consumers. That, they argue, renders Florida's case law inapposite.

## II. DISCUSSION

### A. Claims Relating to Prepetition Conduct Have Been Discharged, but the Plan Does Not Enjoin Claims Relating to Post-Confirmation Conduct.

The Court has jurisdiction to "enforce and construe" the terms of the Plan and the Confirmation Order. *See Texaco Inc. v. Sanders (In re Texaco, Inc.*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995) (ruling on motion to enforce confirmation order); *see also In re Speigel Inc.*, No. 03-11540 (BRL), 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) ("A Bankruptcy Court also has inherent or ancillary jurisdiction to interpret and enforce its own orders, including the Confirmation Order . . . ."). Bankruptcy Code section 524(a)(2) provides that a discharge under the Code "operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived." And the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1)(A). The Movants argue that Florida ultimately asserts a right to payment for acts that occurred before Plan confirmation.

A claim will be subject to discharge if it relates to conduct arising prepetition that would support a claim had the bankruptcy proceeding not been initiated. *See United States v. LTV*

6

*Corp. (In re Chateaugay Corp.),* 944 F.2d 997, 1003 (2d Cir. 1991) ("[A] 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets."). If the Florida AG were to assert a claim for damages, that claim may or may not be enjoined depending on the basis for the claim. For example, if the AG sought damages from the Movants for conduct related to the ACU Business that occurred before Plan confirmation and continued thereafter, Florida would be subject to the Plan's injunction. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 902 (6th Cir. 2009) (holding that claim for damages relating to business practice that debtor maintained prepetition and continued post confirmation was discharged); *Browning v. MCI, Inc., (In re WorldCom, Inc.)*, 546 F.3d 211 (2d Cir. 2008) (Sotomayor, J.) (finding that claim for postpetition damages relating to condition that existed in same state prepetition was discharged). But if the Florida AG (1) investigates post-confirmation conduct, or (2) asserts a claim seeking to impose a fine or recover damages against the Movants *solely* for deceptive practices occurring after Plan Confirmation, the Florida AG would not be violating the terms of the Plan or Confirmation Order. *See Chateaugay*, 944 F.2d at 1008 (finding that claim for injunctive relief that would terminate or eliminate current wrongdoing was not dischargeable); *In re Torwico Elecs., Inc.*, 8 F.3d 146 (3d Cir. 1993) (deeming an obligation to remedy a continuing danger not a dischargeable claim); *see also Tam Travel*, 583 F.3d at 902 ("[A] successfully reorganized debtor . . . is liable for any independent conduct that arises after the confirmation of its bankruptcy plan."); *O'Loghlin v. County of Orange*, 229 F.3d 871, 878 (9th Cir. 2000) (finding a claim relating to prepetition illegal acts discharged, but a claim relating to "illegal conduct occur[ing] after [the] discharge" was not discharged).

7

And if the Florida AG seeks damages for fraud committed both prepetition and post-confirmation, the claim for prepetition fraud would be enjoined since the Florida AG could have brought that claim before the bankruptcy action. *See Chateaugay*, 944 F.2d at 1003. But the state could still pursue a remedy for the post-confirmation fraudulent conduct so long as that conduct was independent of, and not a mere continuation of, prepetition business practices. *See Tam Travel*, 583 F.3d at 902 (holding that a claim was discharged where debtor merely continued to offer a price that it had set before the petition); *O'Loghlin*, 229 F.3d at 878 (finding illegal conduct after discharge was not discharged). Since claims arising from post-confirmation illegal conduct are not subject to discharge if they are new, independent acts, a claim that the Movants have engaged in new deceptive practices would not have been discharged by the Plan or Confirmation Order. *See O'Loghlin*, 229 F.3d at 878 (holding that a claim based on illegal conduct after discharge not barred by discharge).

The Florida subpoena only seeks information regarding the Movants' conduct after February 1, 2013, and the state has not filed an action against the Movants. If Florida wishes to expand its investigation, it may seek information regarding prepetition conduct so long as it only uses that information to inform a claim based on post-confirmation acts. *See Curtis Mfg. Co. v. Plasti-Clip Corp.*, 888 F. Supp. 1212, 1218 (D.N.H. 1994) *rev'd on other grounds*, 135 F.3d 778 (Fed. Cir. 1998).

### B. Deceptive Billing May Constitute Ongoing Deceptive Conduct, Regardless of Whether the Bills Continue a Pre-Existing Customer Relationship.

The parties dispute whether sending a bill to an existing customer could constitute a new deceptive act, or whether that act would be a continuation of prepetition business practices. Specifically, Florida asserts that Vertrue may be charging customers without authorization, and if so, the practice is a continuing violation. The state cites several cases indicating that bills may

8

themselves be deceptive, particularly if they misrepresent the basis of charges or if they contain unauthorized charges. *See, e.g.*, *FTC v. INC21*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) (finding that customer bills were deceptive where customers had not agreed to buy defendant's products or to incur any charges); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719–21 (S.D. Tex. 2008) (holding that defendant committed deceptive acts by "submitting unauthorized charges on consumers' telephone bills"). Even if the Movants were only billing customers who enrolled prepetition, the Court never approved the Debtors' ongoing billing practices, which may run afoul of state deceptive practices law.

### C. Florida Has Not Yet Taken an Action or Employed a Process Barred by Bankruptcy Code Section 524.

The Movants argue that the discovery Florida seeks would constitute an "action" or "employment of a process" that is barred under the Bankruptcy Code. *See, e.g.*, *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832 (Bankr. S.D.N.Y. 1980) (denying a request for discovery of debtor's customer list as continuation of action and employment of process against debtor); *In re Manown*, 212 B.R. 411, 411 (Bankr. N.D. Ga. 1997) ("Discovery is considered part of the 'continuation' of a proceeding."). But the Movants failed to cite any cases indicating that post-confirmation discovery should treated similarly to discovery during a pending bankruptcy case, where the court must consider the potential "interference" with "the pending bankruptcy case." *See In re Penn-Dixie*, 6 B.R. at 835. Moreover, all but one of the cases Movants rely upon involve discovery being used to initiate or continue litigation, whereas here, Florida has not initiated any litigation.

### D. Florida Has Not Violated the Plan or Confirmation Order Injunctions.

At this stage, Florida has only issued the CID. It has not brought a claim, nor has it expressed any intention of bringing a claim. Instead, Florida has declared that it is investigating

9

post-confirmation conduct, and if it decides to bring a claim, that claim will be restricted to post-confirmation conduct. Thus, Florida's investigation does not run afoul of the Plan or Confirmation Order injunctions. *See Tam Travel*, 583 F.3d at 902; *O'Loghlin v. County of Orange*, 229 F.3d at 878.

The threat remains, though, that Florida could impermissibly expand the scope of its investigation. The Movants' motion is therefore denied without prejudice to renewal if Florida does attempt to bring a claim against the Movants premised on the Movants' prepetition conduct.

### E. The Movants Are Not Entitled to a Contempt Order or to Sanctions.

A bankruptcy court may hold a party in contempt and award sanctions after that party has willfully violated a court order, including for breach of a discharge injunction. *See, Torres v. Chase Bank, USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) ("[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction."). A party seeking a contempt order must offer "proof adequate to demonstrate reasonable certainty that a violation occurred." *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted); *see also Torres*, 367 B.R. at 490 (holding that movant seeking contempt order must show by clear and convincing evidence that other party had knowledge of discharge and willfully violated it). "The purpose of civil contempt is to compel a reluctant party to do what a court requires of him . . . . Civil contempt sanctions may also compensate for any harm that previously resulted." *Chief Exec. Officers Clubs*, 359 B.R. at 534 (citations omitted). Compensation for the aggrieved party may include "all expenses, including attorneys' fees." *In re Cruz*, 254 B.R. 801, 816 (Bankr. S.D.N.Y. 2000); *see also Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (explaining that sanctions in civil

contempt proceedings may be appropriate "to coerce the defendant into compliance with the court's order, and to compensate the complainant for the losses sustained").

Here, Florida has not taken any action violating the Plan or Confirmation Order injunctions. They have not violated an order by this Court, so the Movants cannot sustain their burden for contempt or sanctions.

### III.   CONCLUSION

For the reasons stated above, the Motion is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated:  November 8, 2013
        New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge